## FRANCIS E. LAWRENCE *v.* J. BURRIS.

A rule on the Recorder to produce the original of an act under private signature recorded in his office with the oath of the party, to obtain the order, and the answer of the Recorder to the rule, that the original had probably been delivered to some of the parties interested, are not sufficient to justify the introduction of secondary evidence. It should be shown by the oath of the party that an effort had been made to obtain the original by inquiry of those through whom title is claimed.

In an action of boundary, where the titles of both parties are derived from the same original vendor, the calls of the titles of the parties as understood at the time they were made, and according to the usage of the country at that time, cannot be disregarded on account of more recent surveys made by the Government which would change their boundaries.

APPEAL from the District Court of the Parish of St. Mary, *Voorhies*, J. *J. G. Olivier*, for plaintiff. *H. C. Wilson, J. M. McClarty* and *T. H. Lewis*, for defendant and appellant.

MERRICK, C. J. The present is an action of boundary.

It appears that in 1823, Congress confirmed by Act approved February 28, 1823, in favor of *Robert Martin*, among others, two contiguous tracts of land on each side of Bayou Bœuf, in the parish of St. Mary, the one tract having forty arpents front, by forty arpents depth on each side of the bayou, the other a front of thirty arpents by a like depth of forty arpents. The first of these tracts is called the Pilboro tract, the other the Monteran tract. The plaintiff claims by prescription a part of the Pilboro tract. She produces no title from the original confirmee. The defendant, on the other hand, produces a title from *Robert Martin*

LAWRENCE
v.
BURRIS

of both grants to *W. C. C. C. Martin,* and a sale from *W. C. C. C. Martin* in Jan. 1848, of thirty arpents front on the south side of the bayou, with the depth of forty arpents, described as being bounded above by *J. C. H. Swing* and *Thos. Tucker,* and below by land of the vendor. A survey was made by *Brette,* as agent of *Martin,* and a line was run at his instance in the usual manner of making surveys at that time, giving to the defendant for his boundary on the side where the plaintiff now resides, a line nearly perpendicular to the bayou. This line was in conformity to some approved surveys in the office of the Surveyor General. Those under whom the plaintiffs hold respected this boundary, and placed a fence upon the same, extending as far back as they had cleared. The defendant possessed up to this fence, by joining his fence to the same, and cultivating a part with cane, and occupying the residue as a pasture.

Things remained in this condition until ————, when the Land Department undertook to survey the Robert Martin tracts of land. It appears that in order to prevent a conflict with other settlers, it became necessary to depart from the nearly rectangular lines of the unapproved surveys, and cross the bayou obliquely. By this proceeding, the quantity on each side of the bayou was not preserved, and a line was run as the boundary of the Monteran tract, crossing the bayou near the line designated by *W. C. C. C. Martin* to defendant as his boundary, but diverging from it at an angle of 38.33 degrees, and cutting off from defendant's tract at the lower side, as delivered him, 287 acres, and diminishing his whole tract from 1200 arpents to 881 acres, notwithstanding some increase by a similar line on the upper boundary.

It has been already remarked, that plaintiff claims by prescription, and it becomes necessary to consider the extent of her possession. The calls of all of plaintiff's titles, with one exception, are for twenty-eight arpents front, by a depth of forty arpents. The construction of the calls of her titles, in accordance with the decision of this court in the case of *Bourguignon* v. *Boudousquié,* 7 N. S. 700, gives her the boundary which has been recognized by the parties up to the time of the recent survey made by the Land Department. In a single act of sale, under private signature, of one undivided half of the tract claimed by plaintiff, a reference is made to the side line of one *Thomas Banks,* and the tract bounded on that side by it. To the introduction of a copy from the Recorder's office, it was objected that it was but a copy of a copy. We are of the opinion that the rule on the Recorder to produce the original, and his answer that it had probably been delivered to some of the parties interested, with the oath of the plaintiff's husband to obtain the order on the notary, were not sufficient to justify the introduction of the secondary evidence. It should have been shown by the oath of the parties, that an effort had been made to obtain the original by inquiries of her vendors and those through whom she claims title. Sufficient circumstances, therefore, have not been shown by the oath of the party, to render the loss probable within the meaning of Article 2249 of the Civil Code, and the act ought to have been excluded. It is, therefore, unnecessary to decide whether this supposed act under private signature has a controlling effect over the calls of plaintiff's immediate title and the Sheriff's deeds under which also she claims.

It is clear, that as against *W. C. C. C. Martin,* plaintiff could recover nothing outside of the boundaries by which she has possessed.

If *W. C. C. C. Martin* were to institute an action against the defendant to recover the land lying between the line of the recent surveys, and the line to which defendant has possessed, he would be repelled by the calls of the title and

the survey he caused to be made, by which defendant was put in possession. He would be considered the owner of both tracts, and bound to maintain defendant in possession of the land sold in accordance with the calls of the title. C. C. 840. The plaintiff in no event can have a greater right than *Martin*, the true owner. If plaintiff's pretensions are maintained, instead of having twenty-eight arpents front on the bayou, according to the calls of her title, as commonly understood, she will have forty arpents front upon a portion of the bayou which presents nearly a straight line in front of plaintiff's land, and in fact, of the entire *Pilboro* tract.

We are, therefore, of the opinion, that the calls of the titles of both plaintiff and defendant, as understood at the time they were passed, and according to the usage of the country at that time, must control. The recent surveys made by the Government of *Martin's* lands, cannot change the boundaries of his grant to defendant, which was absolute at the time it was made, nor of the calls of the Sheriff's deeds and other acts under which the plaintiff claims. Neither can a reference to the source of title of the vendor, in some of the acts of sale, control the boundaries which he has assigned and fixed to his grant. And as it concerns *Martin*, he was able to maintain defendant in possession to the extent of the calls of his title.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed, and that there now be judgment in favor of the defendant and against the plaintiff, that the line marked as A B on the plat of survey made by *A. L. Fields* be held as the boundary line between plaintiff and defendant, and that the demand in warranty be dismissed, and that the plaintiff pay the costs of both courts.